UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ORA COLEMAN, et al.                                                    PLAINTIFFS

v.                                              CIVIL ACTION NO. 2:14cv185-DPJ-FKB

MARION COUNTY, et al.                                                  DEFENDANTS

ORDER

This civil-rights dispute is before the Court on Defendants' Motion to Dismiss Individual

Claims (and) Claim for Punitive Damages Under State Law, and to Strike Jury Demand [4];

Defendant John David Vaughan's Motion to Dismiss Federal Claims Asserted Against Him in

His Individual Capacity [8]; and Defendants Marion County, Sheriff Berkley Hall (Official

Capacity), and John David Vaughan's (Official Capacity) Motion to Dismiss Plaintiff's Claims

[10].  For the following reasons, Defendants' motions are each granted in part and denied in part.

I.      Facts and Procedural History

The following averments from the Complaint [1] are considered true for the purposes of

these motions.  On November 17, 2013, Plaintiffs Ora Coleman and Lindora Coleman were

stopped at a roadblock in Marion County, Mississippi.  Compl. [1] ¶ 7.  While stopped, Mr.

Coleman was asked to exit his vehicle for a breathalyzer test.  *Id.* ¶ 8.  Mr. Coleman became

agitated when the device failed to operate, and in response, a deputy fired his taser at Mr.

Coleman, missing him but striking Mrs. Coleman.  *Id.* ¶¶ 9  10.

After the taser was deployed, Mr. Coleman "jumped back into his vehicle, and began to

back away from the road block."  *Id.* ¶ 11.  The deputies opened fire, but Mr. Coleman continued

to flee.  *Id.* ¶ 12.  Mr. Coleman then struck an unmarked truck that Officer Brad McDermit pulled

into the road to block Coleman's exit, *id.* ¶ 13, but Coleman proceeded and the deputies again

opened fire aiming at the driver-side door. *Id.* ¶ 14. Fortunately, Plaintiffs were not struck, and they later pulled the vehicle over before being arrested.

Mr. Coleman was arrested and charged with felony fleeing and eluding an officer and with assault upon an officer. *Id.* ¶ 18. On April 15, 2014, a grand jury returned a two-count indictment against Mr. Coleman for aggravated assault upon McDermit and Vaughan, and on January 20, 2015, Mr. Coleman pleaded guilty to simple assault of McDermit. Indictment [8-1]; Mot. [10] on Pg. 1; Pet. [8-3] at 5  12.[1]

On November 18, 2014, Plaintiffs filed their Complaint [1] in this Court against Marion County; Sheriff Berkley Hall, in his official capacity only; and Deputy John David Vaughan, in his official and individual capacity.[2] Plaintiffs allege Defendants violated their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, while also alleging various state-law claims. They ask for declaratory and injunctive relief, nominal damages, compensatory damages, punitive damages, pre- and post-judgment interest, and attorney's fees and costs. The matter is now before the Court on Defendants' three motions to dismiss [4, 8, and 10]. The motions have been fully briefed, and the Court has personal and subject-matter jurisdiction.

_____

[1]Although the indictment, guilty plea, and order of non-adjudication were not part of the pleadings, the Court takes judicial notice of them in deciding this motion. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). Court records entered by court personnel are matters of public record, *cf. Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004).

[2]Because a suit against a municipal official in his or her official capacity is in effect a suit against the municipality itself, *see Bennett v. Pippin*, 74 F.3d 578, 584  85 (5th Cir. 1996), the Court will refer to Marion County and Vaughan and Hall in their official capacities collectively as "Marion County."

II.     Standard of Review

As an initial matter, Defendants filed these motions after their Answer [3].  The Court

therefore construes the motions as motions for judgment on the pleadings under Rule 12(c) of the

Federal Rules of Civil Procedure.  *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)

(per curiam).  Regardless, the standard of review is the same under either rule.  *Great Plains*

*Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).

In considering a motion under Rule 12(c), the "court accepts 'all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v.*

*Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

To overcome a Rule 12(c) motion, Plaintiffs must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual

allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555

(citation and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at

556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged    but it has not 'show[n]'    'that the

pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply

calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the

necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir.

2008) (citing *Twombly*, 550 U.S. at 556).

3

III.    Analysis

Ruling on the pending motions is complicated by two issues.  First, Plaintiffs' Complaint is often ambiguous as to which Plaintiff asserts which claims.  This is especially true as to Mrs. Coleman.  Count I (unlawful seizure) fluctuates between referring to a singular Plaintiff, *see* Compl. [1] ¶ 34 ("Plaintiff incorporates"); *id.* ¶ 40 ("Plaintiff's rights"), and plural Plaintiffs, *see id.* ¶ 35 ("Plaintiffs' right"), *id.* ¶ 37 ("Plaintiffs' unlawful seizure and incarceration").  Count II (unlawful search) speaks only in the singular and with masculine pronouns.  *See id.* ¶ 42 ("The unlawful actions of Defendants . . . deprived Plaintiff of his rights . . . .").  Counts III (false imprisonment) and V (excessive force)[3] similarly speak in the singular, although Plaintiffs' briefing indicates a desire to include Mrs. Coleman in Count V.  Finally, Count VI (state-law claims) again speaks in both the singular and plural.  Given the way the Complaint was drafted, it is difficult at times to line up the parties' arguments with individual Plaintiffs and their pleaded causes of action.

Second, the Plaintiffs often failed to respond to specific arguments Defendants raised in their various memoranda.  For example, Plaintiffs ignored a number of arguments aimed directly toward Mrs. Coleman.  Other times they simply offered a single response for both even though the legal issues were not the same for both.

All of this makes it difficult to determine whether certain claims were ever intended, and if so, whether they have been abandoned.  *See Estate of Pernell v. City of Columbus*, No. 1:08CV0040-DD, 2010 WL 1737638, at *4 (N.D. Miss. Apr. 28, 2010) (holding that failure to argue a point in response amounts to a concession of the issue).  The Court has done its best to

---

[3]The Complaint skips Count IV in its numbering.

sort through the various issues, but given these and other concerns, the parties are instructed to confer within ten days of this Order to determine whether there is any disagreement regarding which claims survive.

      A.      Motion to Dismiss [4]

Defendants seek (1) dismissal of the state-law claims against Vaughan in his individual capacity based on the Mississippi Tort Claims Act (the "MTCA"); (2) dismissal of punitive damages claims against the County; and (3) an order striking the jury demand. These points will be addressed in turn.

            1.      Individual-Capacity Claims Against Vaughan

Relying on the MTCA, Vaughan argues that "Plaintiffs' state law claims against [him] in his individual capacity must be dismissed." Defs.' Mot. [4] at 2. With respect to governmental employees, the MTCA provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2). An employee acts outside the course and scope of his or her employment "if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense." *Id.*

Plaintiffs offer no response to Vaughan's MTCA argument as it relates to the vast majority of their state-law claims. They do, however, state: "To the extent that the actions complained of by the Plaintiffs constitute an assault and battery, Vaughan's actions would be outside the protections of the [MTCA], and Defendants' Motion to Dismiss Plaintiffs' claims against Vaughan individually must be denied." Pls.' Resp. [5] at 4. Vaughan seems to agree. *See* Defs.' Reply [7] at 2 ("to the extent the Plaintiffs are alleging that Deputy Vaughan is acting

outside the course and scope of his employment, those claims are not governed by the

Mississippi Tort Claims Act .").[4]

It therefore appears that Plaintiffs have limited their individual-capacity state-law claims

against Vaughan to claims for assault and battery and that Defendants acknowledge the viability

of such claims    at least at the Rule 12(b)(6) stage.  The motion is denied as to the assault and

battery claims but is otherwise granted.

2. Punitive Damages

Defendants seek dismissal of the punitive-damages demands arising from the state-law

claims.  The MTCA provides that "[n]o judgment against a governmental entity or its employee

for any act or omission for which immunity is waived under this chapter shall include an award

for exemplary or punitive damages."  Miss. Code Ann. § 11-46-15(2).  Plaintiff offered no

resistance to this portion of the motion, and it is therefore granted as unopposed.

3. Jury Demand

Section 11-46-13(1) of the MTCA states that "[t]he judge of the appropriate court shall

hear and determine, without a jury, any suit filed under the provisions of this chapter."  Miss.

Code Ann. § 11-46-13(1).  The parties acknowledge that this provision requires a bench trial as

to the state-law claims against Marion County.  *See* Pls.' Resp. [5] at 4; Defs.' Reply [7] at 2.

All other claims will be decided by jury.  *See Lewis v. Marion Cnty.*, Civil Action No. 2:13-CV-

76-KS-MTP, 2013 WL 3828522, at *2 (S.D. Miss. July 23, 2013) ("Plaintiffs' MTCA claims

must be tried by the Court, but their state-law claims against Defendant Messer individually and

---

[4]Defendants also noted that the County cannot face liability for any claim arising from acts outside the course and scope Vaughan's employment.  *Id*.  But that issue is not properly part of Vaughan's motion and is addressed later.

their Section 1983 claims may be tried by jury.").

        B.      Motion to Dismiss [8]

This motion relates exclusively to the federal claims against Defendant John David

Vaughan.  In it, he generally relies on the *Heck* doctrine, qualified immunity, and *Iqbal/Twombly*.

        1.     *Heck* Bar as to Mr. Coleman's Federal Claims

Vaughan first seeks dismissal of Mr. Coleman's federal claims against him in his

individual capacity based on *Heck v. Humphrey*, 512 U.S. 477 (1994).  More specifically, he

claims that Mr. Coleman's guilty plea to simple assault on a law-enforcement officer forecloses

this § 1983 suit.

    In *Heck*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court must
> consider whether a judgment in favor of the plaintiff would *necessarily imply* the
> invalidity of his conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or sentence has
> already been invalidated.

*Heck*, 512 U.S. at 487 (emphasis added).  But when a § 1983 claim and a prior conviction are

"not necessarily inconsistent," *Heck* does not bar the subsequent civil-rights action.  *Ballard v.*

*Burton*, 444 F.3d 391, 400 (5th Cir. 2006).  "'[T]he *Heck* determination depends on the nature of

the offense and of the claim.'"  *Id.* at 401 (quoting *Arnold v. Slaughter*, 100 F. App'x 321, 323

(5th Cir. 2004) (per curiam)).

    Plaintiffs concede that Mr. Coleman's claims for unlawful search, false imprisonment,

and false arrest are due to be dismissed, and the motion is granted as unopposed on those issues.

But Plaintiffs assert that Mr. Coleman's claims for excessive force and unlawful seizure survive

the *Heck* bar.  More pointedly, they argue that Mr. Coleman's claims accrued before he made

contact with McDermit's truck—the act which gave rise to Mr. Coleman's conviction—and that judgment in his favor regarding the officers' pre-assault conduct would not contradict his conviction.[5]

a.    Excessive Force

The critical question is the following: "Would a finding that [Vaughan's] use of force was objectively unreasonable necessarily call into question the validity of [Coleman's] conviction for simple assault upon [McDermit]?" *Ballard*, 444 F.3d at 398.  The Court starts by looking at the elements of the offense and the elements of the excessive-force claim.

Mr. Coleman pleaded guilty to simple assault of a law-enforcement officer as a result of hitting McDermit's vehicle as Coleman fled the scene.  Mississippi Code section 97-3-7(1)(a)(i) provides in relevant part that "[a] person is guilty of simple assault if he [] attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another . . . ."  Subsection (b) enhances the penalties for simple assault against a law-enforcement officer.  *Id.* § 97-3-7(1)(b), (14).  The indictment charges that Mr. Coleman "did . . . wilfully, unlawfully, feloniously, purposely and knowingly attempt[] to cause serious bodily injury to . . . Officer McDermit by ramming his 2007 Ford F150 into Officer McDermit's department issued vehicle . . . ."  Indictment [8-1] at 1.  The indictment was later amended to charge simple—rather than aggravated—assault on a law-enforcement officer.  Order [8-3] at 2.

As for the excessive-force claim, Mr. Coleman must show "'(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of

---

[5]If Plaintiffs are contending excessive force or unlawful seizure after the collision, then it is not apparent from their response, and those claims are dismissed.

which was objectively unreasonable.'" *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013)

(quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).   In other words, Mr. Coleman

must establish that Vaughan's decision to fire at him while fleeing was objectively unreasonable.

As stated, Plaintiffs contend that they may pursue claims related to the officer's conduct

occurring before the assault.   "[A] § 1983 claim would not necessarily imply the invalidity of a . .

. conviction, and therefore would not be barred by *Heck*, if the factual basis for the conviction is

temporally and conceptually distinct from the excessive force claim."   *Bush v. Strain*, 513 F.3d

492, 498 (5th Cir. 2008).   But, according to Vaughan, the claim and the conviction are not

"temporally and conceptually distinct" because the entire episode must be viewed as one

continuous event.   Def.'s Reply [18] at 5.

Vaughan's legal authority for this argument is distinguishable.   In all but one of his cases,

the plaintiffs pleaded guilty to *resisting arrest* and then pursued excessive-force claims on the

contention that they had done nothing to provoke the use of force.   *See Williams v. Town of

Delhi*, Civil Action No. 14-00043, 2015 WL 868746, at *3 (W.D. La. Feb. 27, 2015) (applying

*Heck* bar where excessive force claim was incompatible with resisting arrest conviction); *Daigre

v. City of Waveland, Miss.*, 549 F. App'x 283, 284 (5th Cir. 2013) (same); *Bolton v. City of

Gulfport ex rel. Schloegel*, Civil Action No. 1:10-cv-297-HSO-JMR, 2012 WL 6094770, at *10

(S.D. Miss. Dec. 7, 2012) (same); *Easterling v. Logazina*, Civil Action No. 3:08CV523 DPJ-

FKB, 2011 WL 213472, at *1 (S.D. Miss. Jan. 21, 2011) (same).[6]

---

[6]The only case Vaughan cited that did not involve resisting arrest was *DeLeon v. City of
Corpus Christi*, but that case involved an assault conviction related to conduct that supposedly
prompted the alleged use of force.   488 F.3d 649, 651 (5th Cir. 2007).   Thus is raises the same
issues as those involving a conviction for resisting arrest.

United States District Judge Halil Suleyman Ozerden explained the rationale of these cases in *Bolton*:

> A successful claim based on a finding that Ms. Bolton "truly did nothing wrong at the scene of the arrest would necessarily imply the invalidity of her conviction for resisting arrest pursuant to Mississippi Code Section 97 9 73." *Easterling v. Logazina*, 3:08 cv 523 DPJ FKB, 2011 WL 213472, *1 (S.D. Miss. Jan.21, 2011) . . . . Ms. Bolton's "excessive force claim is inseparable from, and would therefore undermine, her conviction for resisting arrest. As such, her excessive force claim is barred by *Heck*." *Easterling*, 2011 WL 213472 at *1.

2012 WL 6094770, at *11 (some internal citations omitted, punctuation altered). In other words, a plaintiff cannot claim that the force was excessive because she was not resisting arrest if she has already pleaded guilty to resisting arrest.

Mr. Coleman presents a very different scenario. Accepting the pleaded facts as true, the shots were fired *before* McDermit pulled his vehicle on to the road. *See* Compl. [1] ¶12. Thus, the conduct supporting the assault conviction striking McDermit's vehicle occurred after Vaughan had already opened fire. The Fifth Circuit faced a similar issue in *Bush*. There, the court reversed a *Heck*-based dismissal because a factual dispute existed as to whether the plaintiff ceased resisting arrest before or after the defendant applied force. 513 F.3d at 498. The present case is similarly divisible. A finding that Vaughan used excessive force in shooting at Mr. Coleman before the assault occurred will not call his conviction into doubt. *Id.*

b.   Unlawful Seizure

Mr. Coleman concedes that *Heck* bars his false-arrest claim but continues to pursue his unlawful-seizure claim, contending that he was seized when the officers opened fire. Pls.' Resp. [15] at 6. For the reasons stated above, the Court does not believe that an unlawful-seizure claim related to events before the confessed assault on McDermit would necessarily invalidate Mr.

Coleman's guilty plea.  That said, the unlawful-seizure claim is subject to qualified immunity as

discussed in the next section.

> 2.  Qualified Immunity

Defendants seek dismissal of Plaintiffs' claims on the basis of qualified immunity.  Under

that doctrine,

> government officials performing discretionary functions generally are shielded
> from liability for civil damages insofar as their conduct does not violate clearly
> established statutory or constitutional rights of which a reasonable person would
> have known.  We evaluate claims of qualified immunity using a two-part test:  (1)
> whether the facts that a plaintiff has shown establish a violation of a constitutional
> right; and (2) whether the right was clearly established at the time of defendant's
> alleged misconduct.  [Courts] may examine these two factors in any order.  To be
> clearly established for purposes of qualified immunity, [t]he contours of the right
> must be sufficiently clear that a reasonable official would understand that what he
> is doing violates that right.

*Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (second alteration in original)

(citations and internal quotation marks omitted).  When a defendant raises qualified immunity,

the burden is on the plaintiff to "demonstrate the inapplicability of the defense."  *McClendon v.*

*City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).  "If qualified

immunity is raised in a motion to dismiss, it is the defendant's conduct *as alleged in the*

*complaint* that is scrutinized for objective legal reasonableness."  *Senu-Oke v. Jackson State*

*Univ.*, 283 F. App'x 236, 239 (5th Cir. 2008) (per curiam) (internal quotation marks omitted).

> a.  Mr. Coleman's Claims

> > i.  Excessive Force

Vaughan offers two primary arguments for dismissal of the excessive-force claim:  (1) the

Complaint fails to state a constitutional violation in sufficient detail; and (2) Mr. Coleman fails to

11

assert an injury.  *See* Def.'s Mem. [9] at 12.  Neither argument prevails.

Vaughan's first argument has a few components but initially asserts that "Coleman has wholly failed to provide any factual allegations specifying how Deputy Vaughan used any force on him, much less 'excessive force.'"  Def.'s Mem. [9] at 12.  Looking at the Complaint, the Colemans aver that "*a Deputy* fired his tazer [sic] at Mr. Coleman" after he refused another breathalyzer test.  Compl. [1] ¶ 10 (emphasis added).  The actor in this averment is too vague to place blame on Vaughan for the alleged tasing, so that part of the motion is granted.  But Plaintiffs then contend that Mr. Coleman "jumped back into his vehicle, and began to back away from the road block," *id.* ¶ 11, when "the deputies began to open fire."  *Id.* ¶ 12.  This inclusive averment would cover Vaughan, so the Court next considers whether it states a violation of clearly established law.

To prove his excessive-force claim, Mr. Coleman must show "'(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable.'"  *Ramirez*, 716 F.3d at 377 (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).  Whether the alleged force was reasonable is determined by

> the totality of the circumstances, giving careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Ramirez*, 716 F.3d at 377 (citation and internal quotation marks omitted).  "When deadly force is used, it is clear that the severity and immediacy of the threat of harm to officers or others are paramount to the reasonableness analysis."  *Luna v. Mullenix*, 773 F.3d 712, 719 (5th Cir. 2014) (collecting cases).  With regard to high-speed chases, the United States Supreme Court has held

that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott v. Harris*, 550 U.S. 372, 386 (2007). But, "'a suspect that is fleeing in a motor vehicle is not so inherently dangerous that an officer's use of deadly force is *per se* reasonable.'" *Luna*, 773 F.3d at 720 (quoting *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 416 (5th Cir. 2009)). The question is whether the force was reasonable under the circumstances. *Id.*

Applying these principles to this case, the Court concludes that the Complaint states a claim for a constitutional violation. At this stage, the Court must accept the well-pleaded facts as true. Those facts make no reference to innocent bystanders, excessive speeds, or any real danger to officers and others when Mr. Coleman "began to back away from the road block." Compl. [1] ¶ 11. And while Defendants point to Plaintiffs' collision with McDermit's vehicle, McDermit's vehicle did not "pull[] into the roadway" until *after* shots were fired. *Id.* ¶13. The qualified-immunity analysis turns not on post hoc rationalizations but on "the extent of the threat . . . at the time [the officer] fired," because "an exercise of force that is reasonable at one moment can become unreasonable in the next." *Lytle*, 560 F.3d at 413.

Finally as to this point, Vaughan notes that Mr. Coleman refused the third breathalyzer test and subsequently fled. That much is uncontested, but a fact question remains whether there was sufficient indicia of intoxication to perceive a "threat of harm to officers or others." *Luna*, 773 F.3d at 719. The stop was not initiated due to poor driving, and the Complaint describes alternative reasons for Plaintiffs' flight. Yet Vaughan and others allegedly opened fire immediately after Mr. Coleman began "back[ing] away." Compl. [1] ¶ 12. The Complaint

13

sufficiently states facts supporting an excessive-force claim.

Turning to the second argument, Vaughan contends that Mr. Coleman has failed to plead a sufficient injury.

> [A]lthough a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement is "directly related to the amount of force that is constitutionally permissible under the circumstances." . . .  [A]s long as a plaintiff has suffered "some injury," even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

*Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (per curiam).  Here, the Complaint states that Plaintiffs were "frightened," Compl. [1] ¶ 11, and were "fleeing for their life," *id.* ¶ 13, and that they suffered "emotional distress" and "mental anguish" as a result of the incident, *Id.* at 9. Even if deemed "relatively insignificant," these injuries are sufficient to state a claim because "[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold." *See Lynch*, 524 F. App'x at 79.

As to the clearly-established prong of the qualified-immunity analysis, "'[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.'" *Luna*, 773 F.3d at 725 (quoting *Lytle*, 560 F.3d at 417); *see also Reyes v. Bridgwater*, 362 F. App'x 403, 406 (5th Cir. 2010) ("Unlike some areas of constitutional law, the question of when deadly force is appropriate    and the concomitant conclusion that deadly force is or is not excessive    is well-established.").

The Court cannot say, at this stage of litigation and based on the facts *as stated in the Complaint*, that Vaughan lacked "'notic[e] that [his] conduct [was] unlawful.'" *Kinney v.*

*Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).  His motion for qualified-immunity on this claim is denied.

ii.      Unlawful Seizure

Vaughan also seeks dismissal of the unlawful  seizure claims based on qualified immunity.  The unlawful-seizure claim in Count I remains fuzzy because it fails to identify the specific conduct constituting the seizure.  At this point, however, any claim for the seizure that followed Coleman's assault on McDermit is *Heck* barred.  So Plaintiffs' argue that "shooting at a car to try and stop the car constitutes a seizure."  *See* Pls.' Response [15] at 7 (citing *Flores v. City of Palaciosi*, 381 F.3d 391, 397 (5th Cir. 2004)).

To the extent Mr. Coleman asserts that a the shots fired at his vehicle before the collision with McDermit constitute a seizure, the claim is subject to qualified immunity.  The Complaint clearly states that Plaintiffs continued fleeing despite the pre-collision shots, Compl. [1] ¶¶ 11  15, so no unconstitutional seizure was accomplished.  *See Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (noting that civil-rights plaintiffs in other cases "were not seized because they continued to drive after being hit").  Mr. Coleman has failed to state a clearly established seizure claim that could survive *Heck*.

b.      Mrs. Coleman's Claims

As previously explained, it is difficult to tell from the Complaint whether Mrs. Coleman was included in Count I (unlawful seizure); Count II (unlawful search), and Count III (false imprisonment).  Count I fluctuates between addressing a singular or plural plaintiff, and the others are exclusively pleaded in the singular.  And while Vaughan directly attacked the sufficiency of the pleaded facts as to Mrs. Coleman regarding each of these federal claims,

15

Plaintiffs simply ignored those arguments as they related to unlawful seizure, unlawful search, or false imprisonment. The Court concludes that those claims have been waived and would otherwise fail under Rule 12(b)(6) for lack of sufficient pleading. *See Twombly*, 550 U.S. at 556.

As to excessive force (Count V), Vaughan notes that it was pleaded in the singular and lacks specific factual averments regarding Mrs. Coleman. He nevertheless infers a claim based solely on the taser incident. For their part, Plaintiffs never directly address Vaughan's argument, but they do say "[t]he Colemans have sufficiently pled a claim for excessive force," citing the shooting *and* the taser incident. Pls.' Resp. [15] at 6.

As an initial point, it is this Court's practice to allow amendments to fix pleading errors like these. *See Tuma v. Jackson Mun. Airport Auth.*, No. 3:09cv517 DPJ FKB, 2012 WL 1229133, at *2 (S.D. Miss. Apr. 10, 2012) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation omitted)). And even though Plaintiffs failed to adequately address Vaughan's arguments, it seems apparent from the facts section of the Complaint and their minimal response that Plaintiffs intended to include Mrs. Coleman in Count V related to the tasing incident and subsequent shooting. Leave to amend is therefore extended.

Finally, because Vaughan seeks dismissal of Mrs. Coleman's excessive-force claim (whether pleaded or not), the Court will address it. Looking first to the pre-assault shooting, Vaughan did not infer such a claim as to Mrs. Coleman, so it is not yet before the Court. The taser incident is different. There, the Complaint merely states that "a Deputy fired his tazer [sic] at Mr. Coleman, but missed, and struck Mrs. Coleman." Compl. [1] ¶ 10. Plaintiffs never respond to Vaughan's argument that the Complaint fails to state who fired the taser. *See* Def.'s Mem. [9] at 15. The claim could be dismissed on that basis (perhaps with leave to amend), but

16

Vaughan raises a more fatal flaw that has likewise gone unanswered.

As stated in the Complaint, the deputy hit Mrs. Coleman by mistake.  Compl. [1] ¶ 10.

And, as Vaughan argues, simple negligence is insufficient to state a Fourth Amendment

violation.  *Cf. Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013) (per curiam) ("The

Supreme Court and [the Fifth Circuit] have long held that Fourth Amendment violations occur

only through intentional conduct.").  Plaintiffs failed to respond to this argument, and Vaughan is

entitled to qualified immunity on the taser-related aspect of Mrs. Coleman's excessive-force

claim.[7]

     C.     Motion to Dismiss [10]

          1.     Federal Claims Against Marion County

               a.     Mr. Coleman's Claims

Marion County seeks dismissal of Mr. Coleman's federal claims as *Heck*-barred and for

failure to state a claim.  The Court's *Heck* rulings as to Vaughan's motion [8] apply equally to

this separate motion.  The claim for excessive force prior to the assault on McDermit survives,

the remaining claims are dismissed for the reasons stated.

As for Mr. Coleman's excessive-force claim, the County correctly points out that

municipal liability requires proof of "(1) an official policy or custom, of which (2) a policymaker

---

[7]In response to another motion, Plaintiffs highlight that portion of their Complaint where they allege that "Defendants' actions were . . . intended and designed to punish Plaintiffs," Compl. [1] ¶ 30, and "constitute willful misconduct."  *Id.* ¶ 32.  But these generic assertions are found in the "Allegations-of-Law" section of their Complaint, *id.* at 4, and were not specifically linked to any of the many factual averments.  Under Rule 12(b)(6), the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950.  The above cited pleadings fall in this category, so the Court focuses on the factual averment that the deputy "missed."  Compl. [1] ¶ 10.

can be charged with actual or constructive knowledge, and (3) a constitutional violation whose

'moving force' is that policy or custom."  Defs.' Mem. [11] at 7 (citing *Rivera v. Houston Indep.*

*Sch. Dist*, 349 F.3d 244, 247  49 (5th Cir. 2003)).  And though Plaintiffs failed to plead any

*factual* allegations concerning these elements that would survive *Twombly* review, the County

appears to focus exclusively on the "fail[ure] to demonstrate an underlying constitutional

violation   an essential element of a municipal liability."  *Id.*; *see also* Def.'s Reply [19] at 9

(explaining elements before arguing that "[h]ere, the Plaintiff has failed to demonstrate an

underlying constitutional violation   an essential element of a municipal liability   and his claim

must therefore fail").[8]  Looking then to the presence of a constitutional violation as to Mr.

Coleman, the Court will deny the motion as to Count V (excessive force) because the Complaint

does state a claim related to the deputies' actions before Coleman assaulted McDermit.

> b.    Mrs. Coleman's Claims

The County likewise seeks dismissal of Mrs. Coleman's federal claims, arguing first that

the Complaint fails to include her in Count I (unlawful seizure), Count II (unlawful search), or

Count III (false imprisonment).  Def.'s Mem. [11] at 13  14.  It further argues that the Complaint

fails to provide sufficient factual averments as to these claims if intended to include Mrs.

Coleman.  *Id.*  Plaintiffs failed to address any of these otherwise meritorious arguments, and the

Court concludes that they have been conceded.

Regarding Mrs. Coleman's excessive-force claim, the Court's prior ruling on Vaughan's

motion [8] applies.  Mrs. Coleman will be granted leave to amend her complaint to better state

---

[8]Plaintiffs apparently construed Defendants' motion as focusing on the existence, *vel non*, of a constitutional violation, as they offered no comment on the other elements.

her inclusion in Count V.  Because the County does not address the shooting, that portion of the

claim survives, but federal claims related to the taser incident are dismissed.

        2.      State-Law Claims Against Marion County

The Complaint asserts the following state law-claims against the County:  (1) negligence;

(2) gross negligence; (3) trespass; (4) excessive force; (5) assault; (6) battery; (7) defamation; (8)

negligent training; (9) negligent supervision; (10) malicious prosecution; (11) harassment; (12)

conspiracy; (13) outrage; (14) failure to provide medical treatment; and (15) false imprisonment.

Pls.' Compl. [1] ¶ 58.

        a.      Conceded Claims

Plaintiffs offer no substantive response to the County's arguments regarding the

following claims:  negligent training; negligent supervision; trespass, assault, battery,

defamation, malicious prosecution, conspiracy, outrage, harassment, and failure to provide

medical care.  Those claims are therefore dismissed with prejudice as abandoned.  *See Estate of*

*Pernell*, 2010 WL 1737638, at *4.  The remaining claims for negligence, gross negligence,

excessive force, and false imprisonment are addressed below.

        b.      Mr. Coleman's Remaining State-Law Claims

Defendants contend that Mr. Coleman's remaining state-law claims must be dismissed

based on the MTCA.  "The MTCA provides immunity for the alleged torts of governmental

entities."  *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009) (citing

Miss. Code Ann. § 1146 3).  But it also "waives that immunity, and the governmental entity is

liable, for injuries caused by the entity or its employees while acting in the course and scope of

their employment."  *Id*. (citing Miss. Code Ann. § 11 46 5(1)).  There are, however, exemptions

from this limited waiver.  *Id.*  Here, for example, Defendants rely on the police-function exemption.

> Under that provision, governmental entities retain immunity from any claims
>
> [a]rising out of any act or omission of an employee . . . engaged in the performance or execution of duties or activities relating to police . . . protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c).  According to Defendants, Mr. Coleman violated Mississippi Code section 97-35-7 by refusing the breathalyzer and then fleeing the scene.[9]  He committed another offense when he assaulted McDermit.

Plaintiffs concede criminal conduct in assaulting McDermit.  But they maintain that Mr. Coleman was not engaged in criminal activity when he refused the breathalyzer and fled, because the officers' demands were unlawful.  Pls.' Resp. [16] at 7 (citing *United States v. Di Re*, 332 U.S. 581 (1948)).  Plaintiffs fail to explain their reliance on *Di Re* and offer no additional authority for this or the other generic arguments they raise.  *See generally* Pls.' Resp. [16] at 7  8.

---

[9]Section 97-35-7 provides in pertinent part:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
>
> > (I) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor.

Miss. Code Ann. § 97-35-7.

They nevertheless may have a point.  The Mississippi Supreme Court has long held that a citizen may resist his own unlawful arrest.  *See Taylor v. State*, 396 So. 2d 39, 42 (Miss. 1981); *Smith v. State*, 208 So. 2d 746, 747 (Miss. 1968); *Pettis v. State*, 209 Miss. 726, 48 So. 2d 355, 356  57 (Miss. 1950).  If the arrest was unlawful, then it is not apparent that Mr. Coleman was engaged in criminal activity before he struck McDermit.

Neither party adequately addresses this potentially difficult issue.  The Court therefore errs on the side of caution and will carry forward the negligence, gross negligence, and excessive-force claims related to pre-assault events.  The denial is without prejudice to Defendants' right to re-assert the issues in a motion for summary judgment.

### c.      Mrs. Coleman's State-Law Claims

Again, the Complaint and briefing make it difficult to determine what claims Mrs. Coleman actually asserts.  Nevertheless, the County again invokes the police-function exemption, which preserves governmental immunity unless the officer acted "in reckless disregard."  Miss. Code Ann. § 11-46-9(1)(c).  The County argues that the only discernable claim Mrs. Coleman asserts against it under state law is one for negligence in tasing her.  Indeed her Complaint states that  "a Deputy fired his tazer [sic] at Mr. Coleman, but missed, and struck Mrs. Coleman." Compl. [1] ¶ 10.  And as Defendants note, even gross negligence will not establish "reckless disregard."  *City of Jackson v. Gardner*, 108 So. 3d 927, 929 (Miss. 2013).

Plaintiffs do not contest Defendants' legal argument that immunity exists from claims of negligence or gross negligence.  Instead, they point to their Complaint, where they pleaded that "'Defendants' actions were in bad faith and were intended and designed to punish Plaintiffs,'" and otherwise "'evidence malice and/or constitute willful misconduct.'"  Pls.' Resp. [16] at 8

(quoting Compl. [1] ¶¶ 30, 32).  Therefore, they say, the actions do not fall within the exemption.

As previously noted, these assertions of willfulness are found in the "Allegations-of-Law" section of the Complaint, *id.* at 4, and are not specifically linked to any of the many factual averments.  They are classic legal conclusions "not entitled to the assumption of truth."  *Ashcroft*, 556 U.S. at 679.  Because the only factual assertions Plaintiffs plead regarding the tasing incident assert negligence, they have not established reckless disregard.  The motion is therefore granted as to Mrs. Coleman's state-law claims against the County related to the tasing incident.

IV.     Conclusion

The Court has considered the parties' arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motions to Dismiss [4, 8, and 10] are all granted in part and denied in part.  The stay in this matter is hereby lifted, and the parties are directed to contact the chambers of Magistrate Judge F. Keith Ball in order to re-establish any necessary deadlines.  Finally, the parties are ordered to confer within ten days of this order to determine whether any question remains as to the claims that survived the three motions.

**SO ORDERED AND ADJUDGED** this the 31st day of August, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE